IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gina DeFrank, *et al.*,

    Plaintiffs,

v.

Atlantic Specialty Insurance Co., LLC,

    Defendant.

Case No: 2:19-cv-3645

Judge Graham

Magistrate Judge Vascura

<u>Opinion and Order</u>

Plaintiffs Gina DeFrank and her minor child, T.G, are Ohio residents who bring this diversity action against defendant Atlantic Specialty Insurance Company (ASIC), a limited liability company organized under the laws of New York. The complaint asserts causes of action for breach of contract and bad faith regarding insurance claims made by plaintiffs for an accidental death benefit and a survivor's benefit under an occupational accident policy issued to decedent Robert Crouse.

This matter is before the court on ASIC's motion to compel arbitration, which is granted.

**I.    Background**

Robert Crouse, a truck driver, was struck and killed by an oncoming car in August 2017 while he was outside the cab of his disabled truck along I-70 in Guernsey County, Ohio. Crouse worked as an independent contractor for FAF, Inc.

Crouse had purchased coverage under an Occupational Accident Policy in 2016. The Policy was originally issued by OneBeacon America Insurance Company and has since been assumed by ASIC. The Policy was issued to Transportation Industry Trust, with FAF identified as a participating organization.

Crouse named DeFrank as his beneficiary in one of the enrollment forms. The Policy provided for a death benefit of $50,000 to the beneficiary. It also provided for a survivor's benefit of $250,000 to a surviving spouse or dependent child.

The nature of Crouse's relationship with DeFrank and T.G. is not entirely clear from the complaint. According to defendant, DeFrank was Crouse's live-in girlfriend. *See* Doc. 11-1 (email

sent by DeFrank to a claims adjuster stating that she and Crouse were not married). According to defendant, DeFrank claimed that T.G. qualified as Crouse's foster child. *See* Doc. 11 at PAGEID120.

Following Crouse's death, DeFrank filed a claim for the accidental death benefit, which was paid in the full amount of $50,000 in September 2018. But, according to the complaint, ASIC acted in bad faith during the claims process by delaying payment, conducting an investigation and raising unfounded coverage issues. One such issue related to ASIC's threat to deny coverage based on a toxicology report, which plaintiffs allege showed no more than the presence of a prescribed medication in Crouse's blood system. Another coverage issue raised by ASIC concerned whether Crouse died in the course of performing his job ("under dispatch"), which plaintiffs contend he clearly did. The complaint alleges that ASIC tried to leverage these fabricated issues in an unsuccessful attempt to get DeFrank to settle the claim for $25,000.

Additionally, DeFrank and T.G. filed claims for the survivor's benefit. ASIC denied their claims on the grounds that DeFrank was not Crouse's spouse and that T.G. was not his dependent child. *See* Doc. 13-1 (September 10, 2018 Letter from the claims adjuster to DeFrank). According to plaintiffs, ASIC acted in bad faith by refusing to accept documentation showing that T.G. was Crouse's foster child.

The complaint asserts three counts: Count I – bad faith in the processing of the accidental death benefit claim; Count II – breach of contract in denying the survivor's benefit claims; and Count III – bad faith in denying the survivor's benefit claims.

ASIC contends that these claims must be submitted to arbitration under the Policy's arbitration provision.

**II.     Standard of Review**

The Federal Arbitration Act ("FAA") provides that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where a cause of action is determined to be covered by arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to

2

arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960) (footnote omitted).

Further, "the Supreme Court has held that the FAA preempts state law regarding arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984)).  Even so, state contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to arbitration clauses.  *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987). "'The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.'"  *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005) (internal quotation marks omitted).

## III. Discussion

Defendant moves to compel arbitration under the following provision of the Policy:

> **Arbitration.**  Any contest to a claim denial under this Policy will be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgement on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction.  The arbitration will occur at the offices of the American Arbitration Association nearest to the Insured Person or the person claiming to be the beneficiary.

Doc. 7-1 at PAGEID 97.

In determining whether to compel arbitration, a court must first determine whether the parties agreed to arbitrate.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  If they did, the court must determine the scope of their agreement.  *Id.*  "[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."  *Id.*

Plaintiffs do not dispute the validity and enforceability of the arbitration provision.  In fact, plaintiffs concede in their response brief that Counts II and III are contests to the denial of their claims for the survivor's benefit and therefore must be arbitrated.  *See* Doc. 13 at PAGEID 135.

However, plaintiff DeFrank argues that Count I is not subject to arbitration because it does not relate to a claim denial.  DeFrank's claim for the accidental death benefit was paid out in full.  In her view, the claim of bad faith in Count I concerns the manner in which ASIC handled her claim.

3

The court finds that Count I is covered by the arbitration clause.  As presented in the complaint, the bad faith claim is based on the delay of payment – specifically the "1 year, 3 weeks, and 3 days" that it took for ASIC to "begrudgingly" pay the accidental death benefit.  Compl., ¶ 55.  The complaint alleges that under the Policy, "ASIC agreed to pay the Accidental Death Benefit '**immediately** upon receipt of written Proof of Loss that is acceptable to Us.'"  *Id.*, ¶ 46 (quoting the Policy; emphasis added in the complaint).  It further alleges that DeFrank immediately submitted acceptable proof of loss but ASIC conducted an unwarranted, one-year investigation.  *Id.*, ¶ 48.  Thus, the basis of the bad faith claim is that ASIC denied payment for over one year.  *See id.*, ¶ 58 (alleging that ASIC acted in bad faith "through its foot-dragging").

Under these circumstances, the bad faith claim amounts to a contest about a claim denial that occurred for a one year period.  The delay represents ASIC's denial of the immediate payment to which the DeFrank alleges she was due under the terms of the Policy.  The actionable conduct is ASIC's refusal to timely pay the benefit, and the delay should be treated like a denial.

To the extent there is any doubt whether the bad faith claim is a contest to a claim denial, the court must resolve the doubt in favor of arbitration.  *Moses H. Cone.*, 460 U.S. at 24-25.  This was course taken in the case of *Morgan v. Atlantic Specialty Insurance Co.*, No. 2:17-cv-167, 2018 U.S. Dist. LEXIS 181503 (S.D. Miss May 21, 2018).  *Morgan*, as here, dealt with a policy issued by OneBeacon, and later assumed by ASIC, that had an arbitration clause which covered "any contest to a claim denial."  Plaintiff brought claims for breach of contract and bad faith.  ASIC's alleged bad faith was in its delay as it sought additional information and conducted further investigation.  Plaintiff (wishing to avoid arbitration) argued that his dispute did not relate to a claim denial because the insurer had not officially denied his claim; rather, it closed its file.  The court found that construing the bad faith claim as merely an alleged delay in payment did not help plaintiff because the delay was tantamount to a temporary denial of payment.  *Morgan*, 2018 U.S. Dist. LEXIS 181503 at **14-15.  The court held that any doubts about whether ASIC's bad faith conduct was a claim denial should be resolved in favor of arbitration.  *Id.*

So too here, plaintiff DeFrank's bad faith claim reflects her contest to ASIC's refusal to grant her insurance claim at the time which she contends ASIC was contractually obligated to pay her.  Her dispute is covered by the Policy's arbitration clause.

**IV.     Conclusion**

Accordingly, defendant's motion to compel arbitration (doc. 11) is granted.  The court will stay the proceedings while the parties submit plaintiffs' claims to arbitration.  The parties shall file a status report with the court within 30 days of the conclusion of the arbitration proceedings.


                                                            s/ James L. Graham
                                                            JAMES L. GRAHAM
                                                            United States District Judge

DATE: July 7, 2020